UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

CHARLES CERNANSKY,            :
individually and in his       :
capacity as EXECUTOR OF THE   :
ESTATE OF PETER CERNANSKY,    :
                              :
     Plaintiff,               :
                              :
          v.                  :    Case No. 2:14-cv-180
                              :
TYLER LEFEBVRE, PIONEERS      :
BOARD SHOP, INC., and RUSS    :
OWEN d/b/a SODA FACTORY       :
SKATE BOARDS,                 :
                              :
     Defendants.              :

**OPINION AND ORDER**

On August 28, 2012, Peter Cernansky fell while riding a
skateboard-like device known as a longboard.  Peter hit his head
on the pavement, suffered severe head injuries, and died two days
later.  Peter's father, plaintiff Charles Cernansky, acting
individually and as executor of Peter's estate, now brings this
diversity action claiming failure to warn and wrongful death.

Pending before the Court are two motions to dismiss.
Defendant Tyler Lefebvre, Peter's college roommate and owner of
the longboard, argues that he had no duty to warn of obvious
hazards and that Peter assumed the risk of longboarding.
Defendant Pioneers Board Shops, Inc. ("Pioneers"), the New
Hampshire shop that allegedly sold the longboard, argues lack of
personal jurisdiction and failure to state a claim.  For the
reasons set forth below, Lefebvre's motion to dismiss is **denied.**

Pioneers' motion to dismiss is **denied** without prejudice as to personal jurisdiction.  The Court will allow Plaintiff 30 days in which to conduct jurisdictional discovery with regard to Pioneers' contacts with Vermont.

<u>Factual Background</u>

On August 28, 2012, at approximately 4:30 p.m., Peter Cernansky and his college roommate, Tyler Lefebvre, traveled to Spruce Street in Burlington, Vermont to ride Lefebvre's "Day Walker" longboard.  Peter did not own a longboard, and prior to that day had never ridden a longboard.  Although Lefebvre wore a skate boarding helmet, Peter had no helmet.

The Complaint alleges that Lefebvre failed to provide Peter with any safety instructions prior to taking him longboarding. The Complaint further alleges, upon information and belief, that Peter reached speeds over 25 miles per hour and "began to speed wobble."  ECF No. 1 at 3.  Peter lost control, fell backward, and hit his head against the pavement, suffering occipital and temporal skull fractures as a result of his fall.  He was taken to Fletcher Allen Health Care, where he died on August 30, 2012 after being removed from life support.

Defendant Pioneers, a board shop in North Hampton, New Hampshire, allegedly sponsored Lefebvre as a "longboard ambassador" and provided him with the "Day Walker" board from which Peter fell.  Lefebvre explains in an affidavit that as an

2

ambassador for Pioneers, he "would periodically share photos and/or video of myself riding, display a Pioneers sticker on my equipment, and occasionally attend competitions listing Pioneers as one of my sponsors." ECF No. 9-2 at 1.  In exchange for these services, Lefebvre received discounted products.  Both Lefebvre and Pioneers dispute the allegation that Pioneers sold or otherwise provided the "Day Walker" board.

The Complaint alleges that Defendant Russ Owen d/b/a Soda Factory Skate Board ("Owen") manufactured the longboard.  Owen has filed an answer to the Complaint and is proceeding *pro se*. Levebvre and Pioneers have moved to dismiss.

<u>Discussion</u>

I.   Defendant Lefebvre's Motion to Dismiss

Defendant Tyler Lefebvre moves to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), arguing (1) that he had no duty to warn of obvious dangers and (2) that Peter assumed the risks associated with longboarding.  A motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) tests the legal sufficiency of the plaintiff's claim for relief.  *See Patane v. Clark*, 508 F.3d 106, 111–12 (2d Cir. 2007) (citation omitted).  In considering such a motion, a court must accept as true all well-pleaded facts in the complaint and draw all reasonable inferences in the plaintiff's favor.  *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (citation omitted).  This

3

presumption of truth does not extend to legal conclusions.  *See*
*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).

To survive a motion to dismiss, a party need only plead "a
short and plain statement of the claim," *see* Fed. R. Civ. P. 8(a)
(2), with sufficient factual "heft to show that the pleader is
entitled to relief."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544,
557 (2007) (internal quotation marks and alterations omitted).
Under this standard, the complaint's "[f]actual allegations must
be enough to raise a right of relief above the speculative
level," *see id.* at 555 (citation omitted), and present claims
that are "plausible on [their] face."  *Id.* at 570.  Where a
plaintiff has "not nudged [his] claims across the line from
conceivable to plausible, [his] complaint must be dismissed."
*Id.* at 570.

A.   Gratuitous Bailment - Failure to Warn

Lefebvre first argues that the act of lending Peter the
longboard created a gratuitous bailment, and that a gratuitous
bailor is only required to warn of a latent defect or hazard.  He
contends that in this case the danger of riding a longboard was
not latent and was instead obvious.  He thus concludes that the
Complaint fails to state a plausible failure to warn claim.

In support of his gratuitous bailment argument, Lefebvre
cites Vermont case law from 1901 for the proposition that "'[a]
bailment is the delivery of good[s] for some purpose, upon a

4

contract, express or implied, that after the purpose has been fulfilled they shall be redelivered to bailor . . . ." ECF NO. 6 at 3 (quoting *James Smith Woolen Mach. Co. v. Holden*, 73 Vt. 396, 51 A. 2, 4 (1901)). He next cites out-of-state cases to support the contention that a gratuitous bailor only has a duty to warn of a latent defect or hazard. *Id.*

The failure to warn claim being brought against Lefebvre sounds in negligence. The Complaint alleges that Lefebvre owed a duty of care to Peter, breached that duty of care by failing to provide adequate instructions and warnings, and proximately caused Peter's fatal injuries. ECF No. 1 at 3-4; *see Endres v. Endres*, 2008 VT 124, ¶ 11, 185 Vt. 63, 968 A.2d 336 (setting forth elements of negligence). "Whether a defendant is negligent depends on whether his or her action was objectively reasonable under the circumstances; that is, the question is whether the actor either does foresee an unreasonable risk of injury, or could have foreseen it if he conducted himself as a reasonably prudent person." *Endres*, 2008 VT 124, ¶ 13, 185 Vt. 63, 968 A.2d 336. Under Vermont common law, "the degree of care that a reasonably prudent person would exercise, and thus the scope of the legal duty of ordinary care, is determined by the foreseeability of the consequences of an individual's acts or omissions." *Edson v. Barre Supervisory Union No. 61*, 2007 VT 62, ¶ 10, 182 Vt. 157, 933 A.2d 200.

Consistent with these general principles, the Complaint alleges Lefebvre should have foreseen the potential for serious injury based upon his knowledge of longboarding.  More specifically, Lefebvre allegedly should have foreseen that sending Peter, a first-time longboarder, down a hill without a helmet or instruction presented a risk of harm giving rise to a legal duty.  Plaintiff claims that Lefebvre breached that duty.

The fact that the longboard was loaned to Peter does not alter the negligence analysis.  In the comparable context of negligent entrustment, the "theory requires a showing that the entruster knew or should have known some reason why entrusting the item to another was foolish or negligent." *Vince v. Wilson*, 151 Vt. 425, 429, 561 A.2d 103, 105 (1989) (citation omitted). That theory derives its rule from the Restatement of Torts, which provides:

> One who supplies directly or through a third person a chattel for the use of another whom the supplier knows or has reason to know to be likely because of his youth, inexperience, or otherwise, to use it in a manner involving unreasonable risk of physical harm to himself and others whom the supplier should expect to share in or be endangered by its use, is subject to liability for physical harm resulting to them.

Restatement (Second) of Torts § 390.[1]   The comments to the Restatement clarify that this rule "applies to anyone who

---

[1]   The Vermont Supreme Court has endorsed use of the Restatement to help define Vermont common law. *See Doe v. Forrest*, 2004 VT 37, ¶ 49, 176 Vt. 376, 813 A.2d 48, 67.

supplies a chattel for the use of another.  It applies to sellers, lessors, donors or lenders, and to *all kinds of bailors, irrespective of whether the bailment is gratuitous or for a consideration*."  *Id.*, comment a (emphasis supplied); *see also Vince*, 151 Vt. at 428, 561 A.2d at 105.

Here, it is alleged that Peter was inexperienced, and that Lefebvre should have foreseen the risk of serious harm and taken certain precautions based upon his knowledge of longboarding. "Foresight of harm lies at the foundation of negligence." *LaFaso v. LaFaso*, 126 Vt. 90, 94, 223 A.2d 814, 818 (1966).  While Lefebvre allegedly loaned the longboard to Peter, that act did not affect foreseeability.  The Court therefore finds that Plaintiff has stated a plausible claim of negligent failure to warn under Vermont common law.

    B.   Assumption of Risk

     Lefebvre next argues that Peter assumed the risk of longboarding and that recovery is therefore barred under 12 V.S.A. § 1037.  Section 1037 of Title 12 provides: "[n]otwithstanding the provisions of [Vermont's comparative negligence statute], a person who takes part in any sport accepts as a matter of law the dangers that inhere therein insofar as they are obvious and necessary." 12 V.S.A. § 1037.  Lefebvre contends that the dangers of longboarding were obvious, and that Section 1037 thus prohibits recovery.  Plaintiff submits that the

questions of obvious and necessary should go to the jury, and that any dismissal under Section 1037 would be premature.

The first Vermont Supreme Court decision to construe Section 1037 involved a skier who was injured when he collided with an unpadded, wooden lift-corral post.  *See Estate of Frant v. Haystack Group, Inc.*, 162 Vt. 11, 641 A.2d 765 (1994) ("*Frant*"). The trial court granted summary judgment to the ski area, concluding that under Section 1037 the injured skier had accepted the "obvious and necessary" risk posed by the post.  The Vermont Supreme Court reversed, citing plaintiff's expert evidence of safer construction techniques, the common use of padding on lift poles, and the expert's opinion that "Frant's injury was foreseeable and resulted from "'a well known avoidable hazard in the ski industry.'"  *Id.* at 13, 641 A.2d at 766.  The court also concluded that "whether the ski area's use of wooden corral posts was an 'obvious and necessary' risk should have been a threshold question of fact decided by the jury." *Id.*

Lefebvre points the Court to *Nelson v. Snowridge, Inc.*, 818 F. Supp. 80, 83 (D. Vt. 1993), in which a skier was injured when she slipped and fell while skiing over a patch of ice.  Judge Parker entered judgment as a matter of law in favor of the defendant under Section 1037.  While the decision noted that "[t]he question of what dangers are obvious and necessary and therefore inhere in a sport is generally one for a jury to

decide," Judge Parker nonetheless found "no reasonable mind could fail to immediately conclude that ice is a necessary and obvious danger of skiing in Vermont."  818 F. Supp. at 83.

In the instant case, Plaintiff alleges Lefebvre failed to warn not only of the risk of high speeds, but also of a phenomenon known as "speed wobble."  Whether that risk was readily obvious, like the ice in *Nelson*, or involved more specialized knowledge as in *Frant*, is a matter in dispute and may be explored during discovery.  Plaintiff also disputes whether the level of risk encountered by Peter was necessary, and is again entitled to discovery on that question.  The Court therefore finds that dismissal under 12 V.S.A. § 1037 is not warranted at this early stage of the case, and Lefebvre's motion to dismiss is **denied.**

II.  Defendant Pioneers' Motion to Dismiss

Defendant Pioneers adopts Lefebvre's arguments for dismissal (which are denied as explained above), and also moves to dismiss under Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction. Relevant to the issue of personal jurisdiction, the Complaint cites Lefebvre's relationship with Pioneers as a "longboard ambassador," and claims upon information and belief that Pioneers sold or otherwise provided the "Day Walker" longboard.  In briefing on the motion to dismiss, Plaintiff further highlights the Pioneers' website, its Vermont-specific blog, and its

advertized ability to conduct out-of-state deliveries.  Pioneers argues that a product ambassador is not an agent, denies that it sold or otherwise provided the "Day Walker" board, and disputes Plaintiff's contention that it solicits business in Vermont.

On a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(2), the plaintiff bears the burden of establishing personal jurisdiction.  *MacDermid, Inc. v. Deiter*, 702 F.3d 725, 727 (2d Cir. 2012).  A district court may determine a Rule 12(b)(2) motion on the basis of pleadings and affidavits alone, may permit discovery, or may conduct an evidentiary hearing on the merits.  *Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 84 (2d Cir. 2013) (per curiam) (quoting *Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899, 904 (2d Cir. 1981)).  Those pleadings and affidavits must be construed in the light most favorable to Plaintiff, as the non-moving party, and all doubts are to be resolved in his favor.  *Id.* at 85.  That said, the Court is not obligated to draw "argumentative inferences" in favor of the Plaintiff.  *Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 507 (2d Cir. 1994) (citing *Atl. Mut. Ins. Co. v. Balfour Maclaine Int'l Ltd.*, 968 F.2d 196, 198 (2d Cir. 1992)).  Similarly, the Court is not bound to accept as true legal conclusions couched as factual allegations.  *See Jazini v. Nissan Motor Co.*, 148 F.3d 181, 185 (2d Cir. 1998).

If the court relies on pleadings and affidavits to resolve

the motion, rather than a full evidentiary hearing, Plaintiff need make only a *prima facie* showing of personal jurisdiction. *DiStefano v. Carozzi North America, Inc.*, 286 F.3d 81, 84 (2d Cir. 2001).  To meet his burden, Plaintiff must plead facts sufficient to support a finding that personal jurisdiction is proper under Vermont's long-arm statute and the Due Process Clause of the Fifth and Fourteenth Amendments.  *In re Roman Catholic Diocese of Albany*, 745 F.3d 30, 37-38 (2d Cir. 2014). Because Vermont's long-arm statute, 12 V.S.A. § 913(b), extends personal jurisdiction to the outer limits permitted by the federal Due Process Clause, the Court must analyze whether personal jurisdiction comports with due process.  *Id.* at 38.

The Due Process Clause requires that a defendant "purposefully establishes minimum contacts within the forum State . . . 'such that he should reasonably anticipate being haled into court there.'"  *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985) (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)).  Once such minimum contacts are determined, the Court must decide whether the exercise of personal jurisdiction is reasonable and acceptable under "traditional notions of fair play and substantial justice."  *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

Personal jurisdiction may be specific or general.  "Specific jurisdiction exists when a State exercises personal jurisdiction

11

over a defendant in a suit arising out of or related to the defendant's contacts with the forum; a court's general jurisdiction, on the other hand, is based on the defendant's general business contacts with the forum state and permits a court to exercise its power in a case where the subject matter of the suit is unrelated to those contacts." *Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 567–68 (2d Cir. 1996) (quotation marks and citation omitted).  For specific jurisdiction, "minimum contacts exist where the defendant purposefully availed itself of the privilege of doing business in the forum and could foresee being haled into court there." *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 305 F.3d 120, 127 (2d Cir. 2002).  General jurisdiction is only appropriate where a party's "affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2851 (2011); *see also In re Terrorist Attacks on September 11, 2001*, 714 F.3d 659, 674 (2d Cir. 2013) (explaining that because "general jurisdiction is not related to the events giving rise to the suit, . . . courts impose a more stringent minimum contacts test").  In evaluating the strength of contacts with the forum, a court looks to the totality of the circumstances.  *Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 164 (2d Cir. 2010).

12

A.   Specific Jurisdiction

Plaintiff's specific jurisdiction argument hinges primarily upon Lefebvre's role as an "ambassador" for Pioneers.  That role, Plaintiff argues, made Lefebvre an agent of Pioneers, as he was tasked with promoting both the sport of longboarding and the business of Pioneers.  Pioneers counters that it was nothing more than a sponsor of an athlete, had no control over Lefebvre's actions, and therefore cannot be held vicariously liable for his conduct.  Pioneers has also offered affidavits from Pioneers owner Stephen O'Hara and Lefebvre attesting to the lack of any controlling or other agency relationship between Lefebvre and Pioneers.

An agent is a person authorized by another to act on that other's account.  Among other things, agency requires a "'manifestation by the principal that the agent shall act for [it].'"  *Cabrera v. Jakabovitz*, 24 F.3d 372, 386 (2d Cir. 1994) (quoting Restatement (Second) of Agency § 1 cmt. b (1958)); *accord Springfield Hydroelectric Co. v. Copp*, 172 Vt. 311, 779 A.2d 67, 72-73 (2001) (citing Restatement (Second) of Agency § 1).  "'An essential element of agency" is also "the principal's right to control the agent's actions.'"  *Hollingsworth v. Perry*, 133 S. Ct. 2652, 2666 (2013) (quoting 1 Restatement (Third) of Agency § 1.01, Comment f (2005)).

According to the O'Hara affidavit, Lefebvre's role as an

13

ambassador meant that he "would periodically share photos and/or
videos of himself riding, display a Pioneers sticker on his
equipment, and occasionally attend competitions listing Pioneers
as his sponsor." ECF 9-1 at 1. O'Hara attests that there was no
contract or employment relationship between Pioneers and
Lefebvre, and that Pioneers had no control over Lefebvre's
actions. *Id.* Lefebvre's affidavit similarly states that
"Pioneers never required me to perform any work, attend any
event, or act in any way on its behalf. Pioneers never acted in
any way to control my actions." ECF 9-2 at 2. Furthermore, on
the day in question Lefebvre was "not acting in any way as an
agent, representative, ambassador, sponsored athlete, or in any
other role of any kind on behalf of Pioneers." *Id.* In light of
this testimony, the Court cannot accept Plaintiff's conclusory
assertion of personal jurisdiction based upon an agency
relationship. *See Jazini*, 148 F.3d at 184-85.

Plaintiff also alleges, upon information and belief, that
Pioneers sold or provided the "Day Walker" longboard to Lefebvre.
"Conclusory allegations showing the presence of jurisdiction,
particularly those stated only upon information and belief, are
insufficient to establish that the court has personal
jurisdiction over the defendant." *Guo Jin v. EBI, Inc.*, 2008 WL
896192, at *2 (E.D.N.Y. March 31, 2008) (internal quotation marks
and citation omitted). Also, while the Court has discretion to

14

permit jurisdictional discovery, *see Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 255 (2d Cir. 2007), discovery is not warranted where "the defendant submits an affidavit that provides all the necessary facts and answers all the questions regarding jurisdiction." *A.W.L.I. Group, Inc. v. Amber Freight Shipping Lines*, 828 F. Supp. 2d 557, 575 (E.D.N.Y. 2011); *see also Merck & Co., Inc. v. Mediplan Health Consulting, Inc.*, 425 F. Supp. 2d 402, 420 (S.D.N.Y. 2006).

Here, Plaintiff's assertion that Pioneer provided the longboard is countered by both the O'Hara and Lefebvre affidavits.  O'Hara states that "Pioneers never carried and/or sold any Soda Factory 'Daywalker' skateboards at any time," while Lefebvre attests under oath that he purchased the board directly from the manufacturer in Rhode Island.  ECF 9-1 at 2; ECF 9-2 at 1.  Plaintiff has not contested either affidavit.  The Court therefore finds no basis for allowing jurisdictional discovery on the question of whether Lefebvre obtained the longboard from Pioneers.

Absent any plausible allegations of either an agency relationship or Pioneers' provision of the longboard, there is insufficient support for the assertion of specific jurisdiction. Pioneers did not sell the "Day Walker" longboard, and Peter's fall occurred when a sponsored athlete over whom Pioneers had no control allegedly failed to provide proper warnings and

15

instructions.  Given the totality of these facts, the Court finds
that Pioneers, through its relationship with Lefebvre, did not
"purposefully avail[] itself of the privilege of doing business
in [this] forum" and "could [not] foresee being haled into court
[here]."  *Bank Brussels Lambert*, 305 F.3d at 127 (internal
quotation marks omitted).  Accordingly, specific jurisdiction
over Pioneers does not lie.

    B.   General Jurisdiction

    As noted above, general jurisdiction requires "continuous
and systematic" contacts with the forum state.  *Goodyear*, 131 S.
Ct. at 2851.  The U.S. Supreme Court recently reiterated this
standard: "the inquiry under *Goodyear* is not whether a foreign
corporation's in-forum contacts can be said to be in some sense
'continuous and systematic,' it is whether that corporation's
'affiliations with the State are so "continuous and systematic"
as to render [it] essentially at home in the forum State.'"
*Daimler AG*, 134 S. Ct. at 761 (quoting *Goodyear*, 131 S. Ct. at
2851).  Otherwise, the continuous and systematic "formulation . .
. is unacceptably grasping."  *Id.*

    Here, the Complaint alleges Pioneers is incorporated in New
Hampshire.  The O'Hara affidavit establishes that Pioneers'
principal place of business is also in New Hampshire.  O'Hara
further attests that Pioneers has no direct mail business, does
not travel to Vermont or attend shows or events here, and does

16

not advertise or sell product in Vermont.

In his briefing on the motion to dismiss, Plaintiff contends Pioneers has created and maintains a website that (1) broadcasts its ability to take orders over the phone and ship anywhere and (2) contains a Vermont-specific blog.  The mere creation of a website containing product information viewable by persons within a forum does not establish personal jurisdiction.  *See Royalty Network, Inc. v. Dishant.com, LLC*, 638 F. Supp. 2d 410, 418 (S.D.N.Y. 2009) (noting that "passive" websites that merely make information available to viewers "have 'been analogized to an advertisement in a nationally-available magazine or newspaper, and do[ ] not without more justify the exercise of jurisdiction over the defendant.'") (quoting *Citigroup Inc. v. City Holding Co.*, 97 F. Supp. 2d 549, 565 (S.D.N.Y. 2009)); *American Wholesalers Underwriting, Ltd. v. American Wholesale Ins. Group, Inc.,* 312 F. Supp. 2d 247, 258-59 (D. Conn. 2004).  Furthermore, the ability to accept orders by phone as a result of information placed on a website is generally insufficient to establish personal jurisdiction.  *See, e.g., Mink v. AAAA Development LLC*, 190 F.3d 333, 336-37 (5th Cir. 1999) (finding no personal jurisdiction over Vermont company whose "website provides users with a printable mail-in order form, AAAA's toll-free telephone number, a mailing address and an electronic mail ("e-mail") address."); *Brown v. Web.com Group, Inc.*, 2014 WL 5471927, at *5

17

(S.D.N.Y. Oct. 28, 2014) ("[W]eb-based sales and solicitations . . . usually are not satisfactory grounds for general jurisdiction.").

A Vermont-specific blog, however, creates the prospect of advertisements and other marketing efforts targeting this judicial district directly.  The nature of the blog, its content, and its relationship to sales and marketing may all be important factors in the totality assessment of minimum contacts, *see, e.g., Pitbull Prods., Inc. v. Universal Netmedia, Inc.*, 2008 WL 1700196, at *6 (S.D.N.Y. Apr. 4, 2008) (finding jurisdiction lacking where defendant's website contained only message boards and a blog and did not permit users to purchase goods or services), but the current record is insufficient for the Court to undertake that analysis.  The Court will therefore permit limited discovery on those and related questions.

At the jurisdictional stage, "district courts enjoy broad discretion in deciding whether to order discovery."  *In re Terrorist Attacks on September 11, 2001*, 349 F. Supp. 2d 765, 811 (S.D.N.Y. 2005), *aff'd*, 538 F.3d 71 (2d Cir. 2008).  Courts often permit jurisdictional discovery where the plaintiff has made a "sufficient start" toward establishing jurisdiction, *see, e.g.*, *Hollins v. U.S. Tennis Ass'n*, 469 F. Supp. 2d 67, 70–71 (E.D.N.Y. 2006), but will not permit jurisdictional discovery for the purpose of a "fishing expedition," *see Wego Chem. & Mineral*

*Corp. v. Magnablend Inc.*, 945 F. Supp. 2d 377, 386 (E.D.N.Y. 2013) (citations omitted).  Here, the Plaintiff has asserted the existence of a website with Vermont-specific material.  The Court will therefore allow 30 days for discovery with respect to its potential jurisdiction over Pioneers.  Pioneers' motion to dismiss for lack of personal jurisdiction is **denied** without prejudice, and may be supplemented and resubmitted after the 30-day discovery period has closed.

## Conclusion

For the reasons set forth above, Defendant Lefebvre's motion to dismiss for failure to state a claim (ECF No. 6) is **denied**, and Defendant Pioneers' motion to dismiss for lack of personal jurisdiction (ECF No. 10) is **denied** without prejudice.  Plaintiff is granted 30 days from the date of this Opinion and Order in which to conduct jurisdictional discovery with respect to Pioneers.

Dated at Burlington, in the District of Vermont, this 28th day of January, 2015.

/s/ William K. Sessions III
William K. Sessions III
District Court Judge

19