UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

```
CHARLES CERNANSKY individually and   :
in his capacity as EXECUTOR          :
OF THE ESTATE OF PETER CERNANSKY,    :
          Plaintiff,                 :
                                     :
          v.                         :    Case No. 2:14-cv-00180
                                     :
TYLER LEFEBVRE, and RUSS OWEN d/b/a  :
SODA FACTORY SKATE BOARDS            :
          Defendants.                :
```

**OPINION AND ORDER**

Plaintiff Charles Cernansky brings the present action against Tyler Lefebvre ("Lefebvre") and Russ Owen, doing business as Soda Factory Skate Boards, following the death of his son, Peter Cernansky ("Cernansky"). On April 26, 2016, Defendant Lefebvre filed a motion for summary judgment pursuant to Fed. R. Civ. P. 56. ECF No. 49. In addition, Defendant Lefebvre filed a motion to exclude an expert witness on March 7, 2016, and contends that this expert's report should not be considered at the summary judgment stage. ECF No. 45; ECF No. 52.

**FACTUAL BACKGROUND**

Defendant Tyler Lefebvre and Peter Cernansky were freshman year roommates at Champlain College in Burlington, Vermont. Lefebvre and Cernansky had exchanged messages before moving in together and had lived together for four days before the incident in question. On August 28, 2012, Cernansky asked Lefebvre if he could join him and a group of friends who were going to go skateboarding to a local skate shop. Lefebvre agreed and allowed Cernansky to pick out and borrow one of his longboards. He did not specifically warn Cernansky of the risks inherent in the use of the longboard or provide Cernansky with a helmet.

1

The young men began riding their boards on flat ground down South Willard Street. When they reached a hill, they paused for a minute before heading down the hill. As Cernansky went down the hill, he gained speed and his board began to "speed wobble," causing him to lose control. About halfway down the hill, Cernansky fell off the board and hit the back of his head. He died two days later as a result of this injury.

Prior to leaving Champlain College on that day, Lefebvre did not know that Cernansky was inexperienced at longboarding. After the accident, Lefebvre stated to the police that he did not know how good of a longboarder Cernansky was at the time that he lent Cernansky the longboard. Lefebvre made a consistent statement during the police interview that he then believed that Cernansky was inexperienced, but that neither he nor the other young men who went skateboarding with him were aware of Cernansky's inexperience before the accident occurred. Rather, Lefebvre knew that Cernansky was an avid surfer, and assumed, based on his surfing background, that Cernansky also owned a skateboard. Prior to the accident, Lefebvre either asked Cernansky if he had skateboarded or if he had longboarded before, and Cernansky replied that he had. All of these statements are consistent with the notion that Lefebvre assumed that Cernansky had some relevant experience before the group set out to the skate shop, but that he did not understand that Cernansky was as inexperienced as he now believes him to have been on the day in question.

Nor did Lefebvre become aware of Cernansky's inexperience at some point after the group began skateboarding but before they reached the hill on which the accident occurred. One of the young men in the group, Damian Dryjas ("Dryjas"), stated to the police that "we started going out, and then we noticed that … he was struggling in the back for a bit, and … I … just … kind of had the idea that he never really … done it before." Dryjas did not tell Lefebvre of these observations, nor did he say that Lefebvre specifically understood, based on watching Cernansky skate on flat ground, that Cernansky

2

had never skated with such a board before, or that Cernansky fell behind the group at this point. In contrast, in his deposition, Lefebvre stated that he saw Cernansky "pushing down South Willard with the rest of us, and he was pushing the skateboard just fine." Although Lefebvre reported to the police that he was in front of Cernansky while they skated on flat ground, he did not think that Cernansky was having difficulties at that point because "he stayed with the pack." Similarly, Matthew Falconer ("Falconer"), the other young man in the group, stated in his deposition that Cernansky "seemed fine" before getting to the hill. Although he recognized that this "probably wasn't a good observation" because he was skating while others were skating around him, he stated that Cernansky "wasn't falling behind, or he didn't fall at all, on the way down there."

## STANDARD OF REVIEW

Summary judgment should be granted if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "[O]n summary judgment the inferences to be drawn from the underlying facts ... must be viewed in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587–88 (1986) (citing *United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962)) (internal quotations omitted).

## DISCUSSION

### 1. Lefebvre did not owe Cernansky a duty to warn

This Court previously held that Plaintiff's failure to warn claim against Lefebvre sounds in negligence. In order to prevail on a negligence claim, Plaintiff must establish that Lefebvre owed Cernansky a duty of care, that he breached that duty of care, that the breach was the proximate cause of Cernansky's injuries and that Cernansky suffered actual loss or damage as a result. *See Lenoci v. Leonard,* 21 A.3d 694, 697–98 (Vt. 2011); *Endres v.*

3

*Endres*, 968 A.2d 336, 340 (Vt. 2008). "The scope of the legal duty of ordinary care … is determined by the foreseeability of the consequences of an individual's acts or omissions." *Edson v. Barre Supervisory Union No. 61*, 933 A.2d 200, 204 (Vt. 2007). "Circumstances and dangers are always to be taken into account in determining what is due care or the evidence of it." *LaFaso v. LaFaso*, 223 A.2d 814, 817 (Vt. 1966).

Here, Lefebvre did not have a duty to warn Cernansky of the risk of potential injuries because he did not know that Cernansky was inexperienced at longboarding before the accident occurred. Rather, Lefebvre assumed that Cernansky had some relevant experience before the group began skating (although he wasn't certain as to his level of experience) because Cernansky represented to Lefebvre that he had either skateboarded or longboarded before and because of Cernansky's surfing background. After the group began skating, Lefebvre's limited observations did not challenge these assumptions. Even inferring from Dryjas' statement, as this Court must, that Lefebvre also noticed that "[Cernansky] was struggling in the back for a bit," Lefebvre did not conclude that Cernansky was inexperienced because Cernansky was able to keep up with the group when they were approaching the hill. In light of these facts, no reasonable jury could find that Lefebvre should have foreseen that Cernansky would suffer a fatal injury as a result of his failure to provide additional warnings about the board.

Moreover, the benefit of wearing a helmet while skating down a hill is obvious regardless of one's knowledge of longboarding. Therefore, it was reasonable for Lefebvre to conclude that he did not need to inform Cernansky of that benefit regardless of Cernanksy's experience level. As a result, the Court finds that Lefebvre did not have a duty to warn Cernansky of the benefits of wearing a helmet as a matter of law.

**2. Cernansky assumed the risk of falling off the board**

Next, Lefebvre contends that the Plaintiff's recovery is barred by 12 V.S.A. §1037, which provides that "a person who takes part in any sport accepts as matter of law the dangers that inhere therein insofar as they are obvious and necessary." Contrary to Plaintiff's contention, the determination that a danger is obvious and necessary is not necessarily a jury question. In fact, the very case that Plaintiff puts forth in support of this argument overruled a trial court's summary judgment decision on the question of whether a danger was obvious and necessary only because the plaintiff there had raised a disputed factual issue about whether a risk was "necessary" within the meaning of the statute. *Estate of Frant v. Haystack Grp., Inc.*, 641 A.2d 765, 766 (Vt. 1994). Where discovery has not produced such a material dispute of fact, courts have granted summary judgment on this question. *See, e.g., Nelson v. Snowridge, Inc.,* 818 F. Supp. 80, 84 (D. Vt. 1993).

Even if this Court were to accept the report of the Plaintiff's expert, there is no material dispute of fact that the risk of falling off of a longboard at high speeds is obvious and necessary. Plaintiff's expert, Dr. Gerald George, provides two primary opinions. First, he states that it is more probable than not that Cernansky did not appreciate that speed wobbles constitute a dangerous condition because speed wobbles are a "hidden risk." Second, Dr. George states that if Cernansky had been warned of the "hidden risk" of speed wobbles and of the importance of wearing a helmet, his chance of sustaining a fractured skull would have been minimal. These opinions, however, do not run counter to the Court's finding that the danger of falling off of a longboard at high speeds is "obvious and necessary," as those terms are interpreted under Vermont law.

Under the primary assumption of risk doctrine, which 12 V.S.A. §1037 was intended to codify, a risk is obvious if it is inherent in the nature of the sport. *Estate of Frant,* 641 A.2d 767. Both Lefebvre and Falconer

5

testified in their depositions that speed wobbles occur when a rider goes too fast for his comfort and loses his balance. Dr. George also recognizes that speed wobbles "can and do occur in downhill long boarding." Because the term "obvious" does not "mean something easily observed," Dr. George's conclusion that the risk of speed wobbles was a "hidden risk that the novice participant would not know about" is irrelevant to this Court's legal analysis. *Id.* Rather, the risk of speed wobbles, which amounts to nothing more than going too fast and losing one's balance, is obvious because it is inherent to longboarding.

Moreover, a risk is "necessary" under the terms of the statute if the effort required to remove it would be impossible to undertake or would impose an unreasonable burden. *Id.*; *Nelson v. Snowridge, Inc.*, 818 F. Supp. 80, 83 (D. Vt. 1993) (finding that ice is a necessary condition of skiing because "despite exhaustive grooming efforts, ice still remains evident on at least some portion of most ski slopes in the East" and "[i]f a ski area were required to close a trail every time there was ice present, it would surely be forced to curtail its operations for a good part of the ski season"). Evidence of common practices used to avoid a well-known hazard would tend to refute a finding that the risk was necessary. *Id.* Here, Falconer testified that the only way to prevent speed wobbles is to go at a comfortable speed by carving across the road as one travels downhill. However, the Plaintiff presented no evidence that the risk of losing one's balance while going too quickly could be eliminated. Therefore, the Court finds that the risk of falling off of a board due at high speeds is obvious and necessary, and that Plaintiff's recovery is also barred by 12 V.S.A. §1037.

## CONCLUSION

For the reasons set forth above, Defendant Lefebvre's motion for summary judgment (ECF No. 49) is **granted**, and his motion to exclude an expert witness (ECF No. 45) is **denied** as moot.

Dated at Burlington, in the District of Vermont, this 15th day of December, 2016.

/s/ William K. Sessions III
William K. Sessions III
District Court Judge
